UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM ROBINSON,

                  Petitioner,           **REPORT AND RECOMMENDATION**
                                                 **No. 07-CV-6041(CJS)(VEB)**

      -vs-

DALE ARTUS, Superintendent of
Clinton Correctional Facility,

                  Respondent.
_____

## I.    Introduction

Petitioner William Robinson ("Robinson" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Genesee County) following a jury trial on two counts of Burglary in the First Degree (N.Y. Penal Law § 140.30(2), (3)), and one count each of Gang Assault in the First Degree (N.Y. Penal Law § 120.07) and Assault in the First Degree (N.Y. Penal Law § 120.10(1)). Robinson contends that the police identification procedure was unduly suggestive; that the verdict was not based on legally sufficient evidence and was against the weight of the evidence; and that the trial court erred in failing to declare a mistrial following the prosecutor's attempt to impeach a witness for the state.

This matter has been referred to the undersigned for the issuance of a Report and Recommendation regarding the disposition of Robinson's petition. For the reasons that follow, I recommend that the petition be dismissed.

II.    **Factual Background and Procedural History**

On January 25, 2003, at about 12:30 a.m., Marcia Weber ("Weber") testified that she was in the bedroom of her second-floor apartment at 7 Watson Street in the City of Batavia, while James Wilcox ("Wilcox" or "the victim") was in the living room watching television and doing a crossword puzzle. T.33-35, 47-49, 80, 178, 192-94, 197-98.[1]  There was a knock on the door; when she asked who was there, she received a response that it was "D". T.34-35, 50-51, 178, 195, 198. Weber testified that she knew someone by the nickname of "D". When she opened the door, this person was standing alone in the downstairs hallway. T.35-36, 51-52, 65-66.

While Weber was speaking with D, the door at the bottom of the stairs burst open. Robinson, along with D and a third man, ran up the stairs and forced their way into Weber's apartment. T.36, 52-54, 56. Weber tried to leave, but the men blocked her path and shut the door. Robinson said to her, "shut the fuck up[,] bitch and get in the front room." T.37-39.

Wilcox related that he recognized Robinson and D as two of the intruders: he and his wife, Kim, had known petitioner since the middle of 2002. In addition, Robinson had stayed at their house, along with D, on numerous occasions during the course of five to six weeks. T.176-78, 217, 240-43.  However, Weber and Wilcox knew petitioner only by his nickname of "Warrior". T.37-38, 176. With regard to the third intruder, Weber and Wilcox indicated that they recognized him as someone they had previously seen in the company of Robinson and D. They did not know this third man's name, however. T.37, 180-81, 204, 206.[2]

---

[1]      Citations to "T.__" refer to the trial transcript.

[2]      Both Wilcox and Weber identified petitioner in court as one of the men who participated in the assault. T.37-38, 65-67, 78-79, 176, 182-83. Steven Farrell ("Farrell"), Eddie Miles ("Miles") and Kim Wilcox ("Kim") all identified petitioner in court as the individual whom they knew by the nickname "Warrior". In addition, Farrell, Miles and Kim all testified that they previously had observed petitioner in the victim's presence. T.81, 83-84,

According to Wilcox and Weber, both Robinson and D were wielding baseball bats while the third intruder brandished a hammer. T.39, 180-81, 207. D went into the living room and swung his bat at Wilcox's knees, and then Robinson and the third man entered the living room and assaulted Wilcox as well. T.180-81. The third man struck Wilcox in the left eye with the hammer, while Robinson and D struck Wilcox with their baseball bats "[i]n th head, face, arms, all over," T.182. *See* T.39, 58-59, 180-82, 200-02, 204-05, 207-11, 228. Wilcox eventually was able to fight back, T.182, and the three assailants then fled the apartment. T.40-41, 56, 60, 71-72, 182, 211-12. Wilcox estimated that the incident lasted about six minutes. T.212-13.

After the assault, Wilcox was bleeding profusely from his face and the back of his head. It looked as though his left eye were missing; he had to lift the eyelid up to discover that it was still intact. T.41. As a result of the hammer blows, Wilcox sustained impaired vision in his left eye, which still existed, nine months later, at the time of trial. T.187, 215-16. Wilcox's arm, following the attack, appeared to be "wavy, like it was broken, complete[ly] wavy," T.41. Wilcox received staples to the back of his head to close the lacerations and was treated for substantial pain to his upper body caused by struck with the baseball bats. T.41-42, 61, 183, 187, 213-14.

Two days after the incident, Acting Chief of Police Darryl Sehm ("Chief Sehm") interviewed Weber about the assault and took a deposition from her on January 31, 2003. Chief Sehm interviewed Wilcox on January 28, 2003. Both Wilcox and Weber informed Chief Sehm that the intruders were three black men, one of whom they knew only by the name "Warrior". T.159-61, 164. At around that time, Chief Sehm received information that Warrior and petitioner were the same person. T.161-63.

---

101-02, 240-43.

About three months later, Chief Sehm interviewed Robinson about the incident. After waiving his rights, T.150-53,  Robinson gave a written statement denying any involvement in the attack on Wilcox. T.154-56. According to his statement, Robinson had known Darrell Taylor ("D") since they were children but he did not know Wilcox, Weber, Farrell, or Miles. Robinson also denied every living with Darrell Taylor in Batavia or being inside any apartment on Watson Street. Robinson stated that he had never been involved in any altercations in Batavia and that he did not have a nickname. Robinson admitted that he was the person in the photograph referenced by the statements provided to the police by Weber and Wilcox. However, he denied breaking into Weber's apartment or participating in the assault on Wilcox. T.156-57.

Detective Paul Caffo ("Det. Caffo") testified regarding two incidents in which he had seen Robinson in the presence of Darrell Taylor. First, he saw them together during a traffic stop in Batavia on July 12, 2002, about seven months prior to the incident. T.146, 148. Det. Caffo also saw them together on August 16, 2002, along with Wilcox, at Wilcox's residence. T.146-49. Det. Caffo identified petitioner by his given name and by his nickname. T.145-46.

Defense counsel called Officer Darryle Streeter ("Officer Streeter") to testify regarding the interview of Weber and Wilcox at the hospital when they sought medical treatment following the incident. T.247-48.  At that time, Officer Streeter recalled, Wilcox did not give a description of his assailants, except to say that all three were black males. T.248. Weber described the perpetrators as three black males and stated that one of them was larger than the other two and also had two gold front-teeth. T.248. Weber told Officer Streeter that one of the attackers was someone whom she knew by the nickname, "D". Weber identified a second assailant as someone whom she knew by the nickname, "Warrior". T.249.

The jury returned a verdict convicting Robinson as charged in the indictment of two counts of first degree burglary, one count of first degree gang assault, and one count of first degree assault. Robinson was adjudicated as a second violent felony offender and sentenced to four concurrent determinate prison terms of twenty-five years with regard to each conviction, to be followed by five years of mandatory post-release supervision.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Robinson's conviction, and the New York Court of Appeals denied leave to appeal. *People v. Robinson*, 24 A.D.3d 1262 (App. Div. 4th Dept. 2005), *leave denied*, 6 N.Y.3d 837 (N.Y. 2006).

Robinson filed the instant habeas corpus petition on or about January 22, 2007, raising four claims for relief: (1) the trial court improperly denied petitioner's motion to preclude identification evidence; (2) the evidence was legally insufficient to support the convictions; (3) the verdicts were against the weight of the evidence; and (4) the trial court improperly denied petitioner's motion for a mistrial after the prosecutor attempted to impeach Kevin Mullings, a witness for the state. *See* Docket No. 1.

Respondent answered the petition and conceded that it was timely filed. Respondent has raised the defense of non-exhaustion with regard to Robinson's claim regarding the allegedly erroneous denial of the mistrial motion. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 12-14. In addition, respondent asserts that petitioner's claim of insufficient evidence is procedurally barred and that the "weight of the evidence" claim is not cognizable in a federal habeas proceeding. *See* Resp't Mem. at 21-28.  Respondent alternatively argues that these claims are without merit.

### III.    Exhaustion

Before seeking a writ of  habeas corpus pursuant to 28 U.S .C. § 2254, a petitioner must exhaust the remedies available in state court or demonstrate that "there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9-10 (1992); *Rose v. Lundy*, 455 U.S. 509 (1982). In order to exhaust a federal constitutional claim, a petitioner must "fairly present" the claim to the highest state court from which review is available. *See Picard v. Connor*, 404 U.S. 270, 275, 278 (1971) (stating that the claims presented by a petitioner to the state appellate courts must be the "substantial equivalent" of the claims raised in the federal habeas petition); *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir.1995); *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 194 (2d Cir.1982) (*en banc*), *cert. denied*, 464 U.S. 1048 (1984). A petitioner may satisfy the "fair presentment" requirement by (a) relying on pertinent federal cases employing constitutional analysis, (b) relying on state cases employing constitutional analysis in like fact situations, (c) asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) alleging a pattern of facts that is well within the mainstream of constitutional litigation. *Daye*, 696 F.2d at 194; *see also Strogov v. Attorney General of the State of New York*, 191 F.3d 188, 191 (2d Cir.1999).

When there is no longer any avenue in state court by which petitioner may obtain review of his federal constitutional claim, a federal court may deem the claim exhausted. *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991). Procedurally defaulting on a claim will preclude habeas review of that claim unless the petitioner can establish

"cause" for the default and "prejudice" attributable thereto, or that a "fundamental miscarriage of justice" will occur should the habeas court not review his claim. *Harris*, 489 U.S. at 263 n. 9; *Grey*, 933 F.2d at 120.

"A fundamental miscarriage of justice occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriquez v. Mitchell*, 252 F.3d 191, 204 (2d Cir.2001) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). To show a fundamental miscarriage of justice, petitioner must "show by clear and convincing evidence that but for" the constitutional error, "no reasonable juror would have found the petitioner guilty" of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 350 (1992)).

## IV.    The "Adequate and Independent State Ground" Doctrine and Procedural Default

A petitioner's failure to comply with state procedural or substantive rules may be a basis for precluding habeas review under the "adequate and independent" grounds doctrine. *See Coleman v. Thompson*, 501 U.S. 722, 726 (1991); *Harris v. Reed*, 489 U.S. 255, 261-63 (1989); *accord Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d Cir.1991). A state court judgment will not be found to be based on an adequate and independent state ground unless the state court "clearly and expressly" states that the "judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris*, 489 U.S. at 260 (citations omitted); *accord Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617 (2d Cir.1994).

Such claims are procedurally defaulted may be reviewed by a habeas court on the merits only if the petitioner can demonstrate "cause" and actual "prejudice." *Murray v. Carrier*, 477 U.S. 478, 485-86 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *accord Bossett*, 41 F.3d

at 829. In order to demonstrate "cause," the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. Counsel's failure to recognize the factual or legal basis for a claim, or failure to raise a claim, does not in itself constitute "cause" for a procedural default. *Id.* at 486-87.

In establishing prejudice, petitioner must demonstrate "pervasive actual prejudice," that is, not merely a showing of trial errors creating a " possibility of prejudice, but that they worked to his *actual and substantial* disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). If a habeas petitioner cannot establish cause and prejudice, his other option is to attempt to demonstrate a "fundamental miscarriage of justice," *see Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993), which is generally shown only by proving that he is "actually innocent." *Murray*, 477 U.S. at 496.

## V.    Standard of Review

The writ of habeas corpus is available to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Since this petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") enactment, the provisions of AEDPA govern to the extent they are applicable. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *accord Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir.2001). A court reviewing a habeas petition under AEDPA may not grant a writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or (2) "based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).

**VI.     Analysis of the Petition**

    **A.     Ground One: The photographic array was unduly suggestive and the victims' identifications of petitioner were not independently reliable.**

"It is the reliability of identification evidence that primarily determines its

admissibility[.]" *Watkins v. Sowders*, 449 U..S. 341, 347 (1981) (citing *Manson v. Brathwaite*,

432 U.S. 98, 113-14 (1977); *United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 402-404 (7th

Cir. 1975)). The standard for determining admissibility of confrontation evidence "is that of

fairness as required by the Due Process Clause of the Fourteenth Amendment." *Manson v.

Brathwaite*, 432 U.S. at 114 (citations omitted). The Supreme Court held in *Manson* that due

process requires the exclusion of eyewitness identification that entails "'a very substantial

likelihood of irreparable misidentification.'" *Id.* at 116 (quoting *Simmons v. United States*, 390

U.S. 377, 384 (1968)). If the hearing court determines that the pre-trial identification procedure

was not unduly suggestive, then no further inquiry is constitutionally mandated, and "the

reliability of properly admitted eyewitness identification, like the credibility of other parts of the

prosecution's case is a matter for the jury." *Foster v. California*, 394 U.S. 440, 442, n.2 (1969);

*see also Watkins*, 449 U.S. at 347.

The evaluation as to whether a pre-trial photographic array was unduly suggestive, must

be made "in light of the totality of surrounding circumstances." *Simmons*, 390 U.S. at 383-84; *see

also Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("[A] claimed violation of due process of law in

the conduct of a confrontation depends on the totality of the circumstances surrounding it[.]."). The Second Circuit has explained that "[t]he fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992).  If there is nothing "inherently prejudicial," *id.*, about the presentation of the photographs, the "'principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to "suggest to an identifying witness that [that person] was more likely to be the culprit,"'" *id.* (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (quoting *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir.1984)).

Suggestive identification procedures are those that "'increase the likelihood of misidentification,' and '[i]t is the likelihood of misidentification which violates a defendant's right to due process.'" *Raheem v. Kelly*, 257 F.3d at 133-34 (2d Cir. ) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)) (alteration in original). As the Supreme Court has instructed, the right to due process encompasses the right the accused not to be the object of a suggestive police identification procedure that creates "a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384; *accord Solomon v. Smith*, 645 F.2d 1179, 1190-91 (2d Cir.1981).

Robinson asserts that the photographic array shown to Weber and Wilcox was unduly suggestive because his photograph was darker than the other five photographs in the "six-pack" array, which allegedly caused the viewer's eye to be drawn to petitioner's photograph. *See* Pet. at 7 (Docket No. 1); Respondent's Exhibit ("Resp't Ex."), B at 22, Resp't Ex. C at 6. Robinson claims that because the identification was unduly suggestive, it was error for the trial court to

permit Weber and Wilcox to identify him at trial. The suppression court did not "find the array to

be in any fashion suggestive," H.45-46,[3] since all of the subjects depicted were of "approximately

the same age and approxiately the same racial and hair characteristics," H.45-46. The suppression

court further stated that "[m]inor variations would not be sufficient to render the lineup

suggestive, although there are no minor variations which I think pinpoint [petitioner] over the

others." H.46. On direct appeal, the Appellate Division agreed and rejected the claim on the

merits, finding that the photographic array was not unduly suggestive. *People v. Robinson*, 24

A.D.3d at 1262 (citing *People v. Gettys*, 162 A.D.2d 963 (App. Div. 4th Dept.), *lv. denied*, 76

N.Y.2d 857 (N.Y. 1990) ("Although some of the photographs in the array are of men with

somewhat darker skin tone than that of defendant, after examining the photo arrays in question,

we conclude that the witnesses' attention was not drawn to a particular subject.").

     The determination of whether a pre-trial identification was suggestive is a mixed question

of law and fact. *See Sumner v. Mata*, 455 U.S. 591, 597 (1982). As a result, the statutory

presumption of correctness that exists with regard to a state court's factual findings on habeas

review, see 28 U.S.C. § 2254(e)(1), does not apply in determining the constitutionality of the

procedures in this instance. *Sumner*, 455 U.S. at 597 n. 10; *accord Alvarez v. Keane*, 92 F.

Supp.2d 137, 152 (E.D.N.Y.2000). Section 2254(e)(1)'s presumption of correctness does apply

to any pure determination of fact made by the state courts. *See Sumner*, 455 U.S. at 597; *accord*

*Alvarez*, 92 F. Supp.2d at 152. Here, the record amply supports the suppression court's factual

determination that the subjects used in the array were of the same race and shared approximately

the same facial characteristics, including their complexions, type of facial hair, and hairstyles

---

[3]     Citations to "H.___" refer to the transcript of the suppression hearing.

("dreadlocks"). The differences in skin tone which Robinson claim to exist in the photographs are extremely minor and do not single out Robinson, as the suppression court found. In any event, differences in complexion tones between subjects in an identification procedure, standing along, does not create an unduly suggestive procedure. *See Roldan v. Artuz*, 78 F. Supp.2d 260, 273 (S.D.N.Y. 1999) ("Differential in skin color between lineup participants does not violate due process.") (citing *Agosto v. Kelly*, No. 88 CV 1336, 1989 WL 79484, at *3 (E.D.N.Y. July 10, 1989) ("Slight variations in complexion tone, to the extent they existed, did not create an unconstitutionally suggestive pre-trial identification.")); *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977) ("[Defendant's] claim of unnecessary suggestiveness relates only to the qualities of the photographs, not to the manner of their presentation. He argues that the focus and contrasts were sharper in his photograph; that a narrow strip of light not in the other photographs ran across the field above his head; and that his hair was longer and darker, his moustache darker and bushier, than those of the other individuals depicted. We hold that these differences did not render the spread suggestive in the first instance, much less impermissibly so within the meaning of *Simmons*.").

"The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." *United States v. Bubar*, 567 F.2d at 199 (citing *United States v. Harrington*, 490 F.2d 487, 494-95 (2d Cir. 1973)); *see also Tavarez v. LeFevre*, 649 F. Supp. 526, 530 (S.D.N.Y. 1986) ("There is no requirement that a suspect in a lineup be surrounded by people identical in appearance."). Robinson's appearance in his photograph did not make distinctive from the others in the array so as to suggest unfairly that

he was most likely the perpetrator. *See Jarrett v. Headley*, 802 F.2d at 41. Therefore, I conclude that the suppression court and the state appellate court correctly applied the applicable federal law in determining that the photographic array was not suggestive.

Because I have found that the array at issue was not suggestive–let alone so suggestive as to lead to a substantial likelihood of irreparable misidentification–there is no need for the government to prove an independent source for an in-court identification. Thus, it is unnecessary to address the secondary question of reliability. In any event, as the suppression court found, the victims' observations of Robinson were "not a fleeting event, but something of a more sustained period of time." H.45. Moreover, during the course of the incident, both Wilcox and Weber recognized Robinson as someone whom they had known previously by the nickname "Warrior." Weber had known petitioner for two months prior to the assault and had seen him in the company of the two other men who participated in the attack. H.33-35, T.37. Wilcox was better acquainted with Robinson, as Robinson frequently had been an overnight guest at Wilcox's home. T.176-78. Weber and Wilcox were shown the photographic array separately; each of them immediately identified Robinson's photograph as depicting one of the intruders. Neither witness hesitated or expressed doubt regarding their identifications. H.6-7, 9-10, 12, 31.  Looking at the identifications in light of the "totality of the circumstances" under the factors set out by the Supreme Court in *Neil v. Biggers*, 409 U.S. at 199-200, it is clear that there was an independently reliable basis for both Weber's and Wilcox's identifications of petitioner. Because I find that the identifications were independently reliable, I also recommend that Robinson's claim be dismissed on that basis.

**Ground Two:**          **The conviction was not based on legally sufficient evidence**.

Robinson contends that his conviction was not supported by legally sufficient evidence. In particular, Robinson challenges the reliability of the identifications made by Weber and Wilcox of him as one of the perpetrators of the crime. Resp't Ex. B at 23-25, 28-30, Resp't Ex. C at 16-21. On direct appeal, the Appellate Division held that Robinson "failed to preserve his contention for [its] review with respect to the burglary conviction because his motion to dismiss was not specifically directed at the error alleged on appeal with respect thereto." *People v. Robinson*, 24 A.D.3d at 1263 (citing *People v Gray*, 86 NY2d 10, 19 (N.Y. 1995) ("[E]ven where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error which, here, is the failure of the People to show that the defendants had knowledge of the weight of the contraband.") (quoting *People v. Cona*, 49 NY2d 26, 33, n 2 (N.Y. 1979). The Appellate Division went on to hold that, in any event, the evidence to support the burglary conviction was "legally sufficient . . . because both the victim of the assault and the resident of the apartment where the crimes occurred identified defendant as one of the participants in the crimes." *Id.* Furthermore, the state court held that evidence with respect to the convictions for gang assault and assault was "legally sufficient to establish that the victim sustained a serious physical injury[.]" *Id.* (citation omitted).

Respondent argues that Robinson's claim regarding the sufficiency of the evidence is procedurally barred because the Appellate Division relied upon an adequate and independent state ground to dismiss the claim–namely, that a party seeking to challenge the sufficiency of the evidence must contemporaneously object[4] by making a trial order of dismissal and must "specifically direct[ ]" his argument at the alleged error or error; failure to do renders the

---

[4]     *See* N.Y. Crim. Proc. Law 470.05(2) (codifying New York's general preservation rule).

insufficiency claim unpreserved for appellate review, *see People v. Gray*, 86 N.Y.2d at 19. *See* Resp't Mem. at 22-24.

The Appellate Division's reliance on the procedural rule was an independent ground for its judgment, notwithstanding its alternative ruling on the merits. *See Velasquez v. Leonardo*, 898 F.2d 7,9 (2d Cir. 1990) (citing *Harris v. Reed*, 489 U.S. at 1044 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Furthermore, as respondent argues, this procedural rule was an adequate[5] ground as well. The rule requiring a trial order of dismissal specifically directed at the alleged infirmities in the prosecution's proof is one that is firmly established and regularly followed, by the courts of New York state. *E.g.*, *Garvey v. Duncan*, 485 F.3d 709, 714, 716 (2d Cir. 2007). However, Robinson failed to substantially comply with its requirements.[6] *See id.* The Court has no difficulty concluding that the Appellate Division's invocation of the contemporaneous objection rule and *People v. Gray* to dismiss Robinson's claim was an adequate and independent state ground, and therefore habeas review of the insufficient evidence claim is procedurally barred unless Robinson can demonstrate either (1) cause for the default and prejudice attributable

---

[5]     *See Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (relevant factors to consider in determining whether a procedural rule is "adequate" are "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in te specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial', and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest") (quoting *Lee v. Kemna*, 534 U.S. 362, 381-85 (2000).

[6]     At the close of the prosecution's case, trial counsel moved to dismiss the indictment, but stated only as follows: "I would make a motion to dismiss, your Honor, insufficiency of the evidence." T.251.

thereto; or (2) that the failure to consider the federal claim will result in a fundamental

miscarriage of justice (*i.e.*, a constitutional error has probably resulted in the conviction of

someone who is actually innocent). *Coleman v. Thompson*, 501 U.S. at 750

Robinson has not attempted to make the factual showing of "actual innocence" required

to qualify for the "fundamental miscarriage of justice" exception. Moreover, on the record before

me, I can discern neither cause for the default nor resultant prejudice. Indeed, prejudice is

singularly lacking as a result of the defense's non-compliance with the preservation rule because

the Appellate Division examined the merits of Robinson's claim of insufficient evidence. *See See*

*Kanani v. Phillips*, No. 03 CIV. 2534PKCAJP, 2004 WL 2296128, at *27 (S.D.N.Y. Oct. 13,

2004) ("Furthermore, while the First Department found Kanani's vindictive sentence claim to

have been procedurally barred for failure to object, it also found that were it to review the claim,

it would have found that the trial judge properly exercised his discretion. Thus, even if trial

counsels performance in this regard was deficient, Kanani could not show prejudice, thus failing

the second *Strickland* prong."), *Report & Recommendation adopted by* No. 03 CIV.2534 PKC,

2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005) (citing *Waters v. McGuiness*, No. 99-CV-0615, 2003

WL 21508318, at *3 (E.D.N.Y. June 16, 2003) ("The Appellate Division reached the merits of

the claim on direct appeal and held that the verdict was legally sufficient to establish guilt beyond

a reasonable doubt and that it was not against the weight of the evidence. Even if counsel was

ineffective for failing to preserve the claim, therefore, petitioner was not prejudiced because the

Appellate Division entertained the claim and rejected it on the merits."). *aff'd*, No. 03-2463, 99

Fed. Appx. 318, 2004 WL 1157732 (2d Cir. May 25, 2004); *Perez v. Keane*, 95 Civ. 2640, 1996

WL 599695, at *10 n. 5 (S.D.N.Y. Oct. 17, 1996) ("Perez claims that trial counsel was

ineffective for having failed to preserve certain issues for appeal. However, the Appellate

Division may review unpreserved errors in the interest of justice, and indeed did so. Thus, Perez

was not prejudiced by the lack of objections."). Because Robinson can establish neither cause nor

prejudice, he cannot overcome the procedural default of his legal insufficiency claim. *Francis v.

Henderson*, 425 U.S. 536 (1976) (stating that both cause and prejudice must be demonstrated).

Accordingly, I recommend that it be dismissed on that basis.

       **Ground Three:**       **The verdict was against the weight of the evidence.**

       Robinson contends that the guilty verdicts returned by the jury were against the weight of

the evidence. On direct appeal, the Appellate Division rejected Robinson's argument. *People v.

Robinson*, 24 A.D.3d at 1262.

       As respondent argues, Robinson's claim regarding the weight of the evidence is not a

federal constitutional claim cognizable in this habeas proceeding. Robinson's "weight of the

evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which

permits an appellate court in New York to reverse or modify a conviction where it determines

"that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight

of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). A "weight of the evidence" argument is a

pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim

is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987)

(weight of the evidence claim is based on court's factual review power; sufficiency of evidence

claim based on the law); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (Fourteenth

Amendment of the federal constitution requires record evidence to reasonably support a finding

of guilt beyond a reasonable doubt).  Accordingly, the Court is precluded from considering the

claim on federal habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255  (1923).

Because Robinson's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. *Accord Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available); *Feliz v. Conway*, 378 F. Supp.2d 425, 430 n. 3 (S.D.N.Y. 2005); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001). Therefore, I recommend that it be dismissed on this basis. *Accord*, *e.g.*, *Correa*, 172 F. Supp.2d at 381.

> **Ground Four:**    **The trial court erred in denying the defense motion for a mistrial based on the prosecutor's attempt to impeach a witness for the state.**

As part of their direct case, the prosecution called Kevin Mullings ("Mullings") for the purpose of eliciting testimony that he knew Robinson and Wilcox and that he had had a conversation with Robinson about Wilcox on January 25, 2003. However, once on the stand, Mullings denied knowing petitioner, either by his real name or by his nickname, "Warrior." T.135-36. When asked if he was acquainted with Wilcox, Mullings replied only that he had "heard of him." Mullings further denied ever having a conversation with petitioner about Wilcox.

T.136. At that point, the prosecutor attempted to impeach Mullings by asking him if he had told

Chief Sehm that he did in fact know petitioner, and Mullings admitted that he had. The

prosecutor then asked Mullings if he had told Chief Sehm that Robinson's nickname was

Warrior. T.136-37. Defense counsel objected on the basis that the prosecutor was impermissibly

attempting to impeach his own witness. T.137.

The trial court then excused the jury and conducted a conference with the attorneys

during which it determined that the prosecutor did not have a contradictory signed statement or

inconsistent sworn testimony from Mullings that would permit impeachment pursuant to New

York Criminal Procedure Law 60.35.[7] The trial court thus agreed with defense counsel and

sustained the objection. T.138-40.

The trial court informed the parties that it intended to instruct the jury to disregard

Mullings' testimony in its entirety. T.141. Defense counsel objected and moved for a mistrial,

arguing that the trial court's proposed remedy would preclude the defense from advancing an

argument that there was a witness who did not know petitioner by the nickname Warrior. T.142.

The trial judge noted that Mullings had already acknowledged that he had told the police that he

knew petitioner but this was not admissible testimony because it was improperly elicited

impeachment. Without a curative instruction, the jury would be unaware that it should not

consider the improper testimony. Furthermore, the trial judge found, there was "nothing else [in

Mullings' testimony] that would constitute mistrial material." T.143. Defense counsel then stated

---

[7]        "When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony." N.Y. CRIM. PROC. LAW 60.35(1).

that he wished the court to issue the curative instruction and the court did so when the jury was called back. T.143-44.[8]

On direct appeal, the Appellate Division rejected Robinson's claim that the trial court "erred in denying his motion for a mistrial based on the prosecutor's attempt to impeach a prosecution witness," holding that the "court's curative instructions alleviated any prejudice to defendant, and . . . any error arising from the prosecutor's questioning of the prosecution witness [wa]s harmless[.]" *People v. Robinson*, 24 A.D.3d at 1263 (citing *People v Kello*, 267 A.D.2d 123, 124 (App. Div. 1st Dept.1999), *aff'd*, 96 N.Y.2d 740 (N.Y. 2001)).

A federal court may intervene in the state judicial process only when a constitutional wrong is at stake. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (*per curiam*). In general, evidentiary rulings by a state court based upon state law do not present a federal constitutional question upon which habeas relief may be granted. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Even if the state court misapplied state evidentiary law in a state criminal case, habeas relief is not warranted unless the erroneous admission of evidence actually rises to the level of constitutional error so as to deprive the defendant of a fundamentally fair trial, and, as a result, of due process of law. *See Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.), *cert. denied*, 464 U.S. 1000 (1983). To determine whether the alleged evidentiary error amounted to a denial of due process, the habeas court must consider "whether the erroneously admitted evidence, viewed objectively in the light of the entire record before the jury, was sufficiently material to provide the basis for a

---

[8]     The trial court instructed the jury as follows:
I'm going to advise you that the testimony of Kevin Mullings has been stricken in its entirety. You must disregard it and not give it any consideration or weight in determining any issue in connection with this trial. From this moment forward you are to treat this as if Kevin Mullings never set foot in the courtroom. T.145.

conviction or to remove a reasonable doubt that would have existed on the record without it."
*Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985).

As an initial matter, respondent argues that Robinson failed to properly exhaust this claim
of evidentiary error because he did not sufficiently alert the state courts of the federal
constitutional nature of the claim. In the appellate brief in the section regarding the mistrial
argument, Robinson's appellate counsel did not cite to any provisions of the federal constitution
or any federal cases, and only cited to one New York state case, *People v. Ortiz*, 54 N.Y.2d 288,
292 (N.Y. 1981) ("[T]he decision to grant or deny a motion for a mistrial is within the trial
court's discretion[.]") (citations omitted). That state case did not cite federal constitutional
caselaw or employ any constitutional analysis. Moreover, the mistrial claim based on an error
concerning New York's statutory rules regarding impeachment of a party's witness does not call
to mind a specific right guaranteed by the constitution. *See Daye v. Attorney Gen'l of the State of
N.Y.*, 696 F.2d at 191-93.  I therefore agree with respondent that Robinson failed to fulfill the
"fair presentment" requirement of the exhaustion doctrine with regard to his mistrial claim.  *See
Ramirez v. Phillips*, No. 00 CIV. 4787(RWS), 2001 WL 214238, at *8 (S.D.N.Y.  Mar. 1, 2001)
("Nowhere in his brief to the Appellate Division, nor in the instant habeas petition, does Ramirez
assert that the trial court's refusal to declare a mistrial violated the federal constitution. All of the
cases cited in his Appellate Division brief were New York State cases. The Appellate Division,
in denying this claim, held that the trial court's ruling was "an appropriate exercise of discretion
"and cited another New York case.").

The claim, however, must be deemed exhausted because Robinson would face an absence
of corrective process were he to return to state court in an attempt to exhaust it. *See Grey v.*

*Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) ("'For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.") (quoting *Harris v. Reed*, 489 U.S. at 263 n. 9). Petitioner has already used the one direct appeal to which he is entitled under New York state law, *see* 22 N.Y. CODE R. & REG. §§ 600.8(b), 500.10(a), and if he were to raise the claim in a collateral motion to vacate, dismissal would be mandated because it is a record-based claim that could have been raised on direct appeal, *see* N.Y. CRIM. PROC. LAW § 440.10(2)(c). *Accord Grey v. Hoke*, 922 F.2d at 120-21. The state procedural rules that give rise to the constructive exhaustion of this claim also render the claim procedurally defaulted. *See*, *e.g.*, *Ramirez v. Attorney Gen'l of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.") (citing *Grey v. Hoke*, 922 F.2d at 120-21); *Washington v. James*, 996 F.2d 1442, 1446-47, (2d Cir.1993), *cert. denied*, 510 U.S. 1078 (1994).

Habeas review of the merits of a procedurally barred claim is unavailable unless the cause and prejudice standard is satisfied. *Wainwright v. Sykes*, 433 U.S. at 87. As discussed above, Robinson cannot demonstrate cause or prejudice, and he has not attempted to demonstrate that he is actually innocent so as to qualify for the fundamental miscarriage of justice exception. Accordingly, I recommend that Robinson's claim of evidentiary error as a result of the prosecutor's attempt to impeach a state witness be dismissed as procedurally defaulted.

In the alternative, the claim may be dismissed on the merits as well. Even assuming that there was evidentiary error as a matter of state law, Robinson has not demonstrated that the

evidence given by Mullings was "'so extremely unfair that its admission violates fundamental conceptions of justice,'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)), *cert. denied*, 525 U.S. 840 (1998). In other words, the erroneously admitted evidence was not "'crucial, critical, [or] highly significant,'" *Collins*, 755 F.2d at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir.1982)). Under the circumstances, as respondent notes, Robinson cannot reasonably claim that he was prejudiced by Mullings' testimony that he did not know petitioner by his real name or his nickname; such testimony could only have benefitted petitioner by helping him prove that he did not go by the name Warrior. But, as discussed above, that evidence was not properly admissible, so the trial court's decision to strike it was correct.

Furthermore, I disagree with Robinson's contention that in such a case, the trial court was constitutionally required to declare a mistrial rather than simply issuing limiting instructions. To the contrary, both state and federal law are clear that the decision regarding whether to declare a mistrial lies within the sound discretion of the trial court. *See Arizona v. Washington,* 434 U.S. 497, 510-11 (1978) (stating that a trial court's determination of whether to declare a mistrial is accorded "the highest degree of respect"); *People v. Testa*, 61 N.Y.2d 1008, 1009 (N.Y. 1984). The refusal to grant a mistrial will not be considered error, much less constitutional error, unless such refusal amounts to an abuse of discretion. *See United States v. Carson,* 52 F.3d 1173, 1188 (2d Cir.1995); *United States v. Coven*, 662 F.2d 162, 175 (2d Cir.1981).

The Second Circuit has stated that when conducting review on direct appeal of a trial court's refusal to grant a mistrial, it assumes that "'that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming

probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be "devastating" to the defendant.'" *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir.1994) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)) (internal citations omitted). Robinson does not argue, and I do not find, that the trial court's curative instructions were in any way deficient. There is no indication that the jury was unable to follow the court's instructions to disregard the evidence or that the evidence was particularly harmful. Robinson thus cannot overcome the presumption that the jury followed the judge's instructions. *See Greer v. Miller*, 483 U.S. at  767 n. 8 ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." (citations and quotations omitted)). Therefore, Robinson has failed to show that the trial court's denial of his mistrial application was an abuse of discretion or infringed upon his due process right to a fair trial in any way. Accordingly, I also recommend that the claim be dismissed on that basis.

**VII.    Conclusion**

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by petitioner be **DENIED**. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  November 20, 2007
       Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
November 20 , 2007.